THOMPSON, Judge.
The employer/carrier (E/C) appeal compensation orders awarding claimant a lump sum advance equal to 90 percent of his future permanent total disability (PTD) benefits. We reverse.
The Claimant, a 43 year old man, was rendered PTD as a result of an industrial accident occurring in April 1972. He has a ten year old daughter and an eight year old son who now share a bedroom in his two bedroom, one bath house. He sought a partial lump sum advance of his future PTD benefits in order to have another bedroom and bath added to his house so that each child could have a room. The addition of another bedroom and bath will cost $15,-000. The claimant’s present family income, including compensation benefits, supplemental compensation benefits, social security benefits and his wife’s salary, is $2,929 per month. His present compensation benefit is $242.67 per month and he receives supplemental compensation benefits of $145.20 per month.
The claimant, instead of seeking a lump sum advance of only the $15,000 needed to build the addition to his home, sought an advance of 90 percent of all future PTD benefits. The present value of an advance of 90 percent of future benefits is $46,701. Claimant’s expert financial planner testified that if claimant spends $15,000 on the addition and invests the remaining $31,701 in five year certificates of deposit earning 10.17 percent, he will receive interest income of $268.67 without invading the principal. Because the interest income would be taxable, claimant’s net income from the CD’s would be only $228.55. However, his compensation benefit would continue, although reduced by 90 percent, and would amount to $24.27 per month. Thus claimant’s net income from the interest on the CD’s and the remaining compensation benefit of $24.27 per month would be $252.82 per month, or $10.15 per month more than he presently receives in compensation benefits. During the hearing, the deputy and both attorneys debated the question whether the Division of Worker’s Compensation would view the lump sum advance as tantamount to a washout, and would discontinue the payment of supplemental benefits. Obviously, if the Division did view the advance as the equivalent of a washout, and did discontinue supplemental benefits, the claimant’s net monthly income from all sources would be reduced by $135.05 rath *1293 er than be increased by $10.15. No evidence was adduced and no legal authority was cited to show whether the granting of the request for a 90 percent lump sum advance would or would not affect claimant’s entitlement to supplemental benefits.
In response to a question by the deputy, the financial planner testified it would not be feasible for the claimant to take out a $15,000 loan to finance the addition. However, the financial planner also testified that the claimant’s total fixed monthly expense for his home mortgages, car loan and credit card loans was only $723 per month, and there was no other evidence given by the claimant or the financial planner showing why borrowing the $15,000 was not feasible.
The deputy also asked what effect claimant’s obligation to pay attorney’s fees in connection with the lump sum advance might have on his financial position, whereupon claimant’s counsel promised to work out something with claimant that will be reasonable to him and will not in any way affect his future income. Counsel did not attempt to explain how this would be possible. The deputy next asked what would happen if she ordered an advance of only the $15,000 required to pay for the addition. Claimant’s counsel’s response was simply that the E/C would have to “take back” a certain amount from each future payment of compensation benefits. Neither counsel for the claimant nor counsel for E/C made any attempt to show the amount of the reduction in claimant’s periodic compensation benefit which would result if the deputy ordered a $15,000 advance rather than the 90 percent advance asked for.
In her order, the deputy found, among other things, that an award of the 90 percent lump sum advance requested would be in claimant’s best interest because “the compensation claimant receives is small, and if the interest market opens up, he will be better able to run his life.” The meaning of this finding is unclear, but without question the finding is speculative and is unsupported by competent substantial evidence. It is clear, however, that the deputy’s finding that the lump sum advance was in the best interest of the claimant was based primarily on the fact that at the time of the hearing the claimant would receive a higher interest rate upon the advanced funds, and a better return on his expected benefits. This is insufficient to demonstrate that the lump sum payment is in claimant’s best interest. Exxon Company, U.S.A. v. Orlando, 444 So.2d 584 (Fla. 1st DCA 1984). The interest market has not opened up as the deputy speculated; indeed, it has fallen to about one-half of the 10.17% the claimant allegedly could have earned at the time of the hearing.
The deputy, apparently relying on the testimony of the financial consultant, also found that “just granting the cost of the addition to the house would not help claimant, as it would increase the monthly expenses of the claimant, and decrease his monthly receipts.” Although the deputy was certainly correct in concluding that awarding the cost of the addition would result in an increase in claimant’s monthly expenses and a decrease in his monthly receipts, these facts alone do not support the finding that an advance of only the $15,000 needed to build the addition to the house would not help the claimant. Because of the insufficiency of the evidence on the subject of claimant’s monthly expenses, there was no basis for the determination, made by the deputy during the hearing on appellant’s motion for rehearing, that awarding only the money needed to build the addition would leave claimant “in a somewhat destitute situation.”
Accordingly, this ease is reversed and remanded for further consistent proceedings.
SHIVERS, J., concurs.
ERVIN, J., dissents with opinion.